In Re: Appeal of Claude deBotton From the Denial by the Zoning Hearing Board of Springfield Township of his Challenge to the Validity of the Zoning Ordinance Etc. Springfield Township, Appellant.

Argued December 7, 1983, before Judges CRAIG, DOYLE and BLATT, sitting as a panel of three.

*Donald H. Pugh,* for appllant.

*Michael Sklaroff,* with him, *Vincent J. LaBrasca and Thomas R. Eshelman, Schnader, Harrison, Segal & Lewis,* and of counsel, *Fronefield and DeFuria,* for appellee.

OPINION BY JUDGE BLATT, April 12, 1984:

Following the denial of a permit to develop a 9.722 acre parcel located at 950 Baltimore Pike in Springfield Township (Township) for commercial use, Claude deBotton (landowner) filed a petition with the Zoning Hearing Board of the Township (Board) seeking a "validity" variance and/or a special exception and, in the alternative, challenging the substantive validity of the Springfield Township Zoning Ordinance pursuant to Section 1004 of the Pennsylvania Municipalities Planning Code (MPC).[1]

The Board denied the application for a "validity" variance on the ground that the landowner had failed to prove that the zoning ordinance deprived him of "any reasonable use of his land to such a degree that his land was confiscated". It dismissed the request for a special exception, holding that the ordinance contained no provision authorizing special exceptions. In

---

[1] Act of July 31, 1968, P.L. 805, added by Act of June 1, 1972, P.L. 333, *as amended,* 53 P.S. §11004.

a separate opinion, the Board also dismissed the landowner's constitutional challenges to the zoning ordinance. On appeal, the Court of Common Pleas of Delaware County found that the Board abused its discretion, and it reversed the Board's decision, ordering that the requested variance be granted. The Township filed the present appeal.

Our scope of review where the court of common pleas has taken no additional evidence is limited to a determination of whether or not the Board committed a manifest abuse of discretion or an error of law. *Marple Township Appeal,* 440 Pa. 508, 269 A.2d 699 (1970). And, of course, where the Board's findings of fact are unsupported by substantial evidence, it has committed a manifest abuse of discretion. *De Cristoforo v. Philadelphia Zoning Board of Adjustment,* 427 Pa. 150, 233 A.2d 561 (1967). Moreover, this court has repeatedly stated that substantial evidence consists of evidence which a reasonable man would accept to establish the fact in question. *Snyder v. Railroad Borough,* 59 Pa. Commonwealth Ct. 385, 430 A.2d 339 (1981).

The Township argues that the court of common pleas exceeded its scope of review which, in this case, is identical to ours, *Pyzdrowski v. Pittsburgh Board of Adjustment,* 437 Pa. 481, 263 A.2d 426 (1970), when it weighed the evidence heard before the Board and reached a conclusion contrary to the one reached by the Board. And a careful reading of the court's opinion reveals that the court did in fact weigh the contradictory evidence offered by the parties at the Board hearings.[2] We are, therefore, constrained to agree

---

[2] The common pleas court stated "[a]fter weighing the evidence introduced by the appellant and the Township, it is apparent that the appellant succeeded in proving that the property could not be

with the Township that the court did exceed its scope of review.

As to the Board's decision, it found that the land-owner's property is located in an area zoned special-use (S-U) which, under the ordinance, is restricted to the following uses:

A. General office building, bank, financial institution or theater designed as a single architectural project or unit, following review and recommendations by the Planning Commission and approval by the Board of Commissioners.

B. Laboratory (scientific or industrial research and development, testing, experimental), provided that:

1. No processing shall be permitted except insofar as such processing is incidental to research and development, process testing or operation of a small experimental pilot plant.

2. There is no commercial production of goods, materials or any other substance for sale or storage or same, except as is necessary for scientific research.

C. Hospital, nursing home, convalescent home or sanitarium, provided that a hospital shall meet the current standards of the appropriate national professional accrediting association for a hospital qualified to train interns with respect to its establishment and conduct.

D. Municipal use and public utility building.

Section 143.51 of the Springfield Township Zoning Ordinance. Additionally, "[e]ach permitted use shall

developed with those uses permitted in the SU zone." Additionally, it appears that the common pleas court may have ruled on credibility when it found "that very little weight can be placed on Mr. McDevitt's [the Township expert] testimony."

have a minimum lot area or tract size of not less than five (5) acres. . . ." Section 143-52A of the Springfield Township Zoning Ordinance.

The Board also found specifically that the landowner could not use his property for a hospital, nursing home, convalescent home or sanitarium (Board Finding of Fact No. 14) inasmuch as the necessary Commonwealth authorities had refused to certify such use. No findings, however, were made with regard to the possible development of the property for use as a laboratory, municipal or public utility building, but our review of the record indicates that, while the landowner presented evidence that he could not develop the subject property in accordance with any of the uses listed in the ordinance, the Township, in its case, chose to rebut only the assertion that the property could not be developed for general office space. And, in light of the narrow rebuttal case presented by the Township, we find that the only issue before us with regard to the variance application is whether or not the Board correctly decided that the landowner could make reasonable use of his property through the construction of an office building.

What the landowner proposed was to develop the property primarily as a shopping center with a small amount of office space located on a second story. Both parties agree that on its face, the ordinance does not include such development as permissible in the S-U district. The landowner argued before the Board, however, that, because the general character of the surrounding properties was intensely commercial and because efforts to market the property as zoned had failed, he had been denied reasonable use of his property and was, therefore, entitled to a "validity" variance.

The Board found, based on substantial evidence, that the zoning ordinance would permit the development of an office building in excess of 100,000 square feet and that, if such a building were constructed, the ordinance would allow the first floor and any lower floors to house retail establishments. The Board found further that the extent of the landowner's efforts to market the property had consisted of placing a sign on the site advertising "temporary office, professional office, doctor offices and storage available for rent", and the landowner had neither listed the property with any real estate brokers nor advertised it in any general circulation newspapers or trade periodicals. (Board Finding of Fact No. 10.) The Board concluded that:

> [T]he attempts to market the subject property, . . . further limited as they were by the suggestion of a temporary nature of the use, do not rise to the standard of proof required to show by the weight of the evidence that the Petitioner [landowner] was deprived of any reasonable use of his land to the degree that his land was confiscated.

Although the landowner admits that his marketing efforts were not extensive, he argues that evidence which he presented at the Board hearings, *i.e.*, that the prior owner had attempted unsuccessfully to market the property as zoned for over three years, made any marketing attempt on his part unnecessary for the law does not require the performance of futile acts. *Commonwealth v. Myers*, 485 Pa. 519, 403 A.2d 85 (1979). He further contends that the evidence which he presented to show the uselessness of constructing an office building in a location where there is no demand or need for such rental space is sufficient under

*Borough of Ingram v. Sinicrope,* 8 Pa. Commonwealth Ct. 448, 303 A.2d 855 (1973) to prove his right to a "validity" variance.

In *Borough of Ingram,* this court held that lack of evidence pertaining to marketing efforts by the landowner is not fatal where *the landowner establishes through other evidence that the land cannot reasonably be used as zoned.* The landowner's reliance on this case here, however, appears to miss the mark. In seeking a "validity" variance, he needed to prove that the application of an otherwise valid ordinance to his particular piece of property was confiscatory in that it deprived him of any reasonable use of the property. *A & D, Inc. v. Zoning Hearing Board, East Nottingham Township,* 32 Pa. Commonwealth Ct. 367, 379 A.2d 654 (1977). Implicit, however, in the Board's finding that the zoning ordinance would permit the construction of an office building in excess of 100,000 square feet, with the lower floors rented as commercial space, is the conclusion that the landowner could make reasonable use of his property as zoned. Thus, the Board found that the landowner did not establish through "other evidence" that his land had been confiscated.

The landowner argues further that the Board abused its discretion in denying the validity variance. Mindful of our scope of review, however, our own reading of the record persuades us that it does contain substantial evidence in support of the Board's conclusion that the landowner could make use of his property as zoned through the construction of an office building. Specifically, the Township's expert testified that there was an absence of high quality office space in the area, that a market for such space existed and that the subject property could be developed for such use in compliance with the ordinance.

Moreover, even the landowner admitted that a building containing both office space and retail commercial space could be constructed on the property as now zoned. And, although evidence was offered to rebut the expert testimony, we believe that the Board acted well within its discretion.

Having concluded that the Board did not commit a manifest abuse of discretion or error of law in denying the landowner a "validity" variance, we turn to the landowner's substantive challenges[3] to the ordinance which were three in number[4]: (1) that the district zoned S-U represents unconstitutional spot zoning; (2) that the zoning ordinance by its very nature precludes development and as such is unlawful; and, (3) that the Township's failure to include a statement of community development objectives in the ordinance, as required under Section 606 of the MPC, 53 P.S. §10606, is unlawful and the ordinance is consequently invalid. We will address these issues seriatim.

---

[3] We are mindful that in deciding the validity of the landowner's substantive challenges to the ordinance here in question we must presume its constitutionality. And, of course, in challenging the ordinance, the landowner must establish by clear and convincing evidence that the ordinance is arbitrary and unreasonable and has no rational relation to the public health, safety, morals, or general welfare. *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975).

[4] The landowner, in his brief, also raised a question concerning the constitutionality of Paragraph A of Section 143.51 of the Springfield Township Zoning Ordinance. He argues that the Board of Commissioners, by its power to review all plans for general office buildings, banks, financial institutions and theaters within the S-U district, has "exceeded the scope of its permissible duties and eliminated the distinction between legislative and and [sic] adjudicative functions. *Accord Eves v. Zoning Board of Adjustment*, 401 Pa. 211, 164 A.2d 7 (1960)." Landowner's Brief at p. 24. The issue, however, was not raised before the Board and consequently, we are not empowered to examine its merits.

In *Schubach v. Silver*, 461 Pa. 366, 382, 336 A.2d 328, 336 (1975), our Supreme Court quoted the following as "perhaps the best all encompassing definition of spot zoning":

It is well settled that "an ordinance cannot create an 'island' of more or less restricted use within a district zoned for a different use or uses, where there are no differentiating relevant factors between the 'island' and the district. ... Thus, singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment, is invalid 'spot' zoning." (Citations omitted.)

*Id.* at 382, 336 A.2d at 336. The Court stated further that "the most important factor in an analysis of a spot zoning question is whether the rezoned land is being treated *unjustifiably different* from similar surrounding land." (Emphasis added.) *Id.*

The district here zoned S-U contains more than 60 acres and the landowner's 9.722 acre tract remains one of the few undeveloped properties within the district. S-U zoning was first enacted in 1959 and later reaffirmed in 1971 when the Township adopted the Springfield Township Land Use Plan (Land Use Plan), and the Board found that the Land Use Plan determined that the proportion of Township property zoned commercial to be generally adequate. The retention, therefore, of an area zoned S-U was appropriate along major streets where the more restricted residential classifications were not suitable but where the extension of traditional retail or ribbon business development was not desirable. The Board also found that, while variances had been granted within the S-U dis-

trict prior to the adoption of the Land Use Plan to allow for the development of the Strawbridge and Clothier Shopping Center, the Olde Sproul Village Shopping Center and the Springfield Mall, the property here concerned remained surrounded by properties developed in accordance with the ordinance.[5]

The landowner's argument that there is spot zoning here appears to be twofold. Relying on *Glorioso Appeal,* 413 Pa. 194, 196 A.2d 668 (1964), he contends that (1) his individual property has been subjected to spot zoning and (2) the entire S-U district is the product of unconstitutional spot zoning. As to the first argument, the property has not been singled out for treatment different from that given to the surrounding tracts, but is just one tract in a 60 acre area zoned S-U. Furthermore, the fact that earlier variances were granted in the S-U district does not necessarily dictate the approval of another application, for variances are granted on a case-by-case basis and then only when the applicant proves that the ordinance imposes upon him a unique hardship and that the approval of the variance will not have an adverse impact on the health, safety and welfare of the general public. *A & D v. Zoning Hearing Board, East Nottingham Township.*

The landowner's reliance on *Glorioso Appeal* is unconvincing. There our Supreme Court determined that a 4½ acre area carved out of an existing commercial district was unconstitutionally rezoned S-U. The Court found that the small size of the district rezoned coupled with the fact that two of the three properties within the tract were already developed for commercial uses, clearly indicated the area to have been unjustifiably singled out for treatment different from that accorded to the surrounding land. Here, the S-U

[5] *See* text at pp. 524-525.

524

district is larger than 4½ acres, and the areas surrounding the S-U district are zoned both commercial and residential. Moreover, the justification for zoning the 60 acres S-U as set forth here in the Township's Land Use Plan is reasonable and is substantially related to the exercise of the Township's police powers.

As to the second substantive challenge, the landowner contends that the ordinance precludes development and is, therefore, unconstitutional under *National Land and Investment Co. v. Easttown Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965), in which our Supreme Court stated:

> Zoning is a tool in the hands of government bodies which enables them to more effectively meet the demands of evolving and growing communities. It must not and can not be used by those officials as an instrument by which they may shirk their responsibilities. Zoning is a means by which a governmental body can plan for the future—it may not be used as a means to deny the future.

*Id.* at 527-528, 215 A.2d at 610. The landowner asserts that the S-U ordinance restrictions have halted the natural commercial development along Baltimore Pike since 1959, and, as a result, the ordinance does "deny the future". Our Supreme Court also stated in *National Land and Investment Co.,* however, that "[t]he zoning power is one of the tools of government which, in order to be effective, must not be subjected to judicial interference unless clearly necessary." *Id.* at 521, 215 A.2d at 607. And we believe that the landowner's contention here that development has been halted since the advent of the S-U district ignores realities. The record indicates that the Bell Telephone Building, the Professional Office West and the Western Savings

Bank, each located within the S-U district, have all been constructed since the enactment of the ordinance in 1959. Moreover, the setting aside of an area as S-U, as defined in the ordinance, when viewed as part of an entire zoning code allowing for residential, commercial and special use districts, is reasonable and rationally related to the protection of the public health, safety, morals and general welfare in Springfield Township.

The landowner contends finally that the absence of a statement of community development objectives in the Township's ordinance violates Section 606 of the MPC, 53 P.S. §10606 and that the entire ordinance is consequently invalid. Section 606 of the MPC, 53 P.S. §10606 provides in pertinent part that:

> Each zoning ordinance enacted after the effective date of this act shall contain a statement of community development objectives. This statement may be supplied by reference to the community comprehensive plan or such portions of the community comprehensive plan as may exist and be applicable or to a statement of legislative findings of the governing body of the political subdivision, having a bearing on the community comprehensive plan, . . . . *With respect to zoning ordinances enacted prior to the effective date of this act, a statement of community development objectives shall be supplied by amendment to the zoning ordinance within three years from the effective date of this act.* (Emphasis added.)

While the Township acknowledges the absence of any statement of community development objectives in its ordinance, it argues that this court does not have the power to declare the ordinance invalid on such a basis,

inasmuch as Section 1011 of the MPC, 53 P.S. §11011 restricts the power of a court to declare an ordinance invalid.[6] But the landowner contends that the word "shall' in the final sentence of Section 606 of the MPC is mandatory and that we must, therefore, hold the zoning ordinance invalid.

We believe that the invalidation of the Springfield Township Zoning Ordinance would be a drastic remedy under the present circumstances. The Township had in fact substantially complied with the Section 606 requirement when in 1971, it adopted a Land Use Plan containing a statement of community development objectives. For this Court to invalidate the ordinance merely because it does not contain a cross-reference to the Township's Land Use Plan would be to raise form over substance.[7]

---

[6] Section 1011 of the MPC, 53 P.S. §11011 provides, in pertinent part, that:

(1) In a zoning appeal the court shall have power to declare any ordinance or map invalid and set aside or modify any action, decision or order of the governing body, agency or officer of the municipality brought up on appeal, only if it determines that:

(a) the municipality has not acted in good faith or made a bona fide attempt in the adoption of its ordinances or maps, or any amendments thereto, to meet the statutory and constitutional requirements for nonexclusionary zoning; or

(b) the ordinance imposes limitations that are not reasonably related to the municipality's authority to determine its physical growth pattern, protect the Commonwealth's public natural resources, coordinate development with the provision of public services, or protect the character of the community.

[7] We would emphasize the importance of Section 606 of the MPC. A review of the MPC reveals the legislative concern for a planned approach to municipality zoning. See Section 105 of the MPC, 53 P.S. §10105 and Section 601 of the MPC, 53 P.S. §10601. And because a comprehensive plan is optional under the MPC, Section 302

We will therefore reverse the decision of the court of common pleas and affirm that of the Board.

ORDER

AND Now, this 12th day of April, 1984, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is reversed and the order of the Zoning Hearing Board of Springfield Township is hereby reinstated.

---

of the MPC, 53 P.S. §10302, the Section 606 requirement that a zoning ordinance contain a statement of community objectives appears to be the only absolute planning prerequisite to insure the validity of a zoning ordinance. *See* Ryan, Pennsylvania Zoning Law and Practice, §2.2.